UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

VALENTINA AMARO BOWSER, et al,

        Plaintiffs,

v.

KRISTI NOEM, *Secretary of the Department of Homeland Security*, et al,

        Defendants.

Case No. 26-cv-10382-AK

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION**

Valentina Amaro Bowser, a native and citizen of Venezuela, and her husband, Brandon Bowser, seek a preliminary injunction requiring U.S. Citizenship and Immigration Services (USCIS) to finish adjudicating Amaro Bowser's pending Form I-765 application for employment authorization, which she submitted on December 11, 2025. Shortly before that, USCIS issued interim guidance placing a hold on final adjudications of applications for certain immigration benefits, such as work authorization, by individuals from specified countries, including Venezuela. Plaintiffs claim the adoption of this policy was arbitrary and capricious and that, in any event, USCIS has unreasonably delayed in adjudicating Amaro Bowser's application. For purposes of their preliminary injunction motion, however, Plaintiffs rely solely on their arbitrary-and-capricious claim. They assert that "the only issue for the court to review in terms of whether the Plaintiff is likely to succeed on the merits of their claim is whether the USCIS's arbitrary hold on adjudication of benefits applications is arbitrary and capricious." Doc. No. 6 at 10.

Plaintiffs are not likely to succeed on the merits of that claim because the Court lacks jurisdiction over it. USCIS's interim guidance placing holds on the final adjudication of certain benefits applications does not constitute final agency action reviewable under the Administrative

Procedure Act (APA). Moreover, the Immigration and Nationality Act (INA) bars jurisdiction over claims challenging the government's discretionary actions with respect to employment authorization applications—including challenges to policies to hold such applications in abeyance. In any event, USCIS's adoption of this policy was reasonable and reasonably explained, as it was based on and rationally connected to documented concerns regarding vetting procedures. The Court should therefore deny Plaintiffs' motion for a preliminary injunction.

## I.  BACKGROUND

### A. Legal Background

#### 1. Presidential Directives and Challenged Policies

Executive Order 14161 (Jan. 20, 2025) directs enhanced vetting for "all aliens who intend to be admitted, enter, or are already inside the United States," focusing on "aliens coming from regions or nations with identified security risks." EO 14161, § 2. It requires that aliens "already present in the United States . . . do not advocate for, aid, or support designated foreign terrorists." *Id.*, § 1(b). Presidential Proclamation 10949 implemented initial findings of the ongoing review and directed continued assessment of vetting procedures. Proclam. No. 10949, 90 Fed. Reg. 24,497 (June 10, 2025). Presidential Proclamation 10998 (Dec. 19, 2025) designated 39 countries with documented deficiencies:

> [W]idespread corruption, combined with lack of vetting and poor recordkeeping, result in any non-citizen obtaining any civil document . . . [T]here is a fraudulent document market producing falsified records, making written corroboration practically impossible . . . [C]riminal records are unreliable and inaccessible . . . United States visas are used for illicit transborder movement by corrupt officials and organized crime.

PP 10998, § 1(f). Per "law enforcement reporting, foreign nationals from countries named in this proclamation have been involved with crimes including murder, terrorism, embezzling public funds, human smuggling, human trafficking, and other criminal activity." *Id*.

2

DHS issued Policy Alert PA-2025-26 directing USCIS to consider country-specific risk factors "as significant negative factors in adjudication of discretionary benefit requests" while preserving adjudicatory discretion. PA-2025-26 at 1-2.

USCIS issued Policy Memorandum PM-602-0192 (Dec. 2, 2025) directing comprehensive security review and establishing holds pending operational guidance:

> Recently, the United States has seen what lack of screening, vetting, and prioritizing expedient adjudications can do to the American people. An Afghan national . . . planned a terrorist attack on Election Day 2024. Tawhedi pled guilty to conspiring and attempting to provide material support to ISIS. In another instance, an Afghan national . . . is suspected of planning and executing a terrorist attack in Washington, DC against two National Guard members, one killed and another critically injured.

PM-602-0192 at 2.  PM-602-0194 defines "hold" to mean "a case [can] proceed through processing, up to final adjudication," with "only the decision deferred" – "if a hold is in place, the case can continue to move forward until ready for a decision." PM-602-0194 at 2 n.2.  USCIS continues collecting biometrics, conducting background checks, performing security screenings, and completing interviews.  PM-602-0192 at 3-4.  On January 1, 2026, USCIS issued Policy Memorandum PM-602-0194, expanding the hold to additional countries with identical provisions. PM-602-0194 at 2-5.  Both PMs direct that "within 90 days . . . USCIS components will review current operations and issue operational guidance." PM-602-0192 at 3; PM-602-0194 at 5.  Holds "remain in effect until lifted or modified by the USCIS Director through a subsequent memorandum." *Id*.

### B. Factual Background

According to the complaint, Amaro Bowser—a native and citizen of Venezuela—"entered the United States with a valid F-1 visa to attend college." Doc. No. 1 at 4 ¶ 9.  Following graduation, she "applied for an H-1B visa and was approved." *Id.* at 5 ¶ 10.  Amaro Bowser subsequently began working as a Media Director for the Commonwealth of Massachusetts, her

3

current employer. *Id.* On December 10, 2025, the Commonwealth filed a petition "to extend her H-1B visa," and that petition remains pending. *Id.* at 5-6 ¶ 10.

In November 2024, Amaro Bowser married Plaintiff Brandon Bowser, who filed a Form I-130 (Petition for Alien Relative) the following year. *Id.* at 6 ¶ 12. At the same time, Amaro Bowser filed a Form I-485 (Application to Register Permanent Residence or Adjust Status). *Id.* Moreover, on December 11, 2025, Amaro Bowser filed a Form I-765 (Application for Employment Authorization). *Id.* at 7 ¶ 12. Plaintiffs' Form I-130, I-485, and I-765 applications remain pending.

On January 27, 2026, Plaintiffs filed this action asserting two claims. First, Plaintiffs seek relief under the APA, claiming that PM-602-0192 and PM-602-0194 (the "Policy Memoranda") are arbitrary and capricious. *See id.* at 13-14. Second, Plaintiffs seek relief under the Mandamus Act, claiming that USCIS has unlawfully withheld—and unreasonably delayed in undertaking—a final adjudication of their pending Form I-130, I-485, and I-765 applications. *See id.* at 14-15. Plaintiffs therefore seek an order declaring the Policy Memoranda unlawful and setting them aside, and an order compelling USCIS to adjudicate their Form I-130, I-485, and I-765 applications "immediately upon entry of judgment in favor of the Plaintiffs." *Id.* at 15.

Plaintiffs also filed the instant motion for a preliminary injunction. Doc. No. 5. Plaintiffs' motion seeks only an order requiring USCIS to adjudicate Amaro Bowser's Form I-765 application for employment authorization—not the Form I-130 or Form I-485 applications. Doc. No. 6 at 1, 13. Moreover, as the basis for their motion, Plaintiffs argue only that the Policy Memoranda are arbitrary and capricious. *Id.* at 10. They assert that "the only issue for the court to review in terms of whether the Plaintiff is likely to succeed on the merit of their claim is whether USCIS's . . . hold on adjudication of benefits applications is arbitrary and capricious." *Id.*

## II.   STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The moving party "bears the burden of satisfying each of these four elements," using evidence to support its contentions.  *Akebia Therapeutics, Inc. v. Azar*, 443 F. Supp. 3d 219, 225 (D. Mass. 2020).  But, even then, "[a] preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter*, 555 U.S. at 24; *see also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.").

## III.  ARGUMENT

### A.  The Court lacks jurisdiction over Plaintiffs' claim.

The sole basis for Plaintiffs' preliminary injunction motion is their claim that the Policy Memoranda are arbitrary and capricious.  *See* Doc. No. 6 at 10 ("the only issue for the court to review in terms of whether the Plaintiff is likely to succeed on the merit of their claim is whether USCIS's . . . hold on adjudication of benefits applications is arbitrary and capricious").  The Court, however, lacks jurisdiction over this claim.

#### 1.  The Policy Memoranda do not constitute final agency action.

The APA only allows for judicial review of "[a]gency action made reviewable by statute" and "final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704. Plaintiffs have not alleged that the Policy Memoranda have been made reviewable by a statute. And they cannot show that the Policy Memoranda constitute final agency action.  The Court

therefore lacks jurisdiction over Plaintiffs' claim that the Policy Memoranda are arbitrary and capricious. *See Puerto Rico v. United States*, 490 F.3d 50, 70 (1st Cir. 2007) ("The issue of whether there was final agency action implicates the jurisdiction of the federal courts, and such final action is normally a prerequisite to judicial review.").

To qualify as "final," an agency action must satisfy "two conditions." *Bennett v. Spear*, 520 U.S. 154, 177 (1997). "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* at 177–78 (internal quotation marks and citation omitted).

First, a challenged action fails the first prong if it is "tentative or interlocutory" and does not express an agency's "unequivocal position." *Holistic Candlers v. FDA*, 664 F.3d 940, 943 (D.C. Cir. 2012). Here, the challenged memoranda are interim guidance and expressly contemplate further action: "within 90 days . . . USCIS components will review current operations and issue operational guidance." PM-602-0192 at 3; PM-602-0194 at 5. Holds "remain in effect until lifted or modified by the USCIS Director through a subsequent memorandum." *Id.*; *see also Gem Cty. Mosquito Abatement Dist. v. EPA,* 398 F. Supp. 2d 1, 11 (D.D.C. 2005) (agency's interim guidance was not final agency action). The challenged memoranda themselves are thus explicit that while a temporary hold is necessitated by recent events and national security concerns, review of policies and procedures for security vetting remain ongoing and further guidance is forthcoming. Thus, the agency memoranda are not final agency actions.

Further, the ongoing nature of USCIS's work demonstrates that no consummation of decisionmaking has occurred on individual petitions or applications. Plaintiffs do not allege that Amaro Bowser's employment authorization application has been denied. The PMs define "hold"

6

to mean "a case [can] proceed through processing, up to final adjudication," with "only the decision deferred." PM-602-0194 at 1 n.2. During holds, USCIS continues collecting and processing biometrics, conducting background checks through multiple databases, performing internal security screenings and case-by-case reviews, and scheduling and conducting interviews where appropriate. PM-602-0194 at 3-4. These processes are individualized, case-specific, and must be completed before any application can be approved regardless of whether a hold is in place. This ongoing work confirms that there has been no consummation of decisionmaking regarding applications and petitions subject to the agency memoranda because USCIS has not reached any final determination on any affected application. This contrasts with cases where an agency made a definitive determination. *See U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (jurisdictional determination final where issued "after extensive factfinding").

The challenged memoranda are also not final actions because no rights or obligations flow from them. Instead, the memoranda and final adjudication holds pursuant to them "mark a midstream pause in an ongoing administrative process—one that remains open to further agency consideration." *Kewayfati v. Bondi*, --- F.4th---, Nos. 25-20073, 25-20101, 2026 LX 94465, at *2 (5th Cir. Jan. 14, 2026). The administrative process *remains ongoing*, both in terms of the memoranda themselves and the individual determinations. USCIS has specifically stated it will issue "operational guidance" within 90 days. PM-602-0192 at 3; PM-602-0194 at 5.

USCIS implemented a pause to allow the agency to reassess its security procedures in light of recent events, including the killing of national guardsmen in Washington, D.C. PM-602-0192 at 2. No applications have been denied and no rights or obligations flow from that pause. Put another way, there has been no "terminal event." *Salinas v. Railroad Retirement Board*, 592 U.S.

7

188, 194-95 (2021). The challenged memoranda are therefore not final agency actions and the Court lacks jurisdiction to review them.[1]

### 2. Section 1252(a)(2)(B)(ii) bars jurisdiction.

Even if the Policy Memoranda constituted final agency action, the Court would still lack jurisdiction. The APA does not apply where another statute "preclude[s] judicial review." 5 U.S.C. § 701(a)(1). And the INA does just that. It provides that, "[n]otwithstanding any other provision of law . . . no court shall have jurisdiction to review . . . any . . decision or action of . . . the Secretary of Homeland Security the authority for which is specified under this subchapter to be in [her] discretion." 8 U.S.C. § 1252(a)(2)(B)(ii). One provision of that subchapter specifies that the Secretary may "authorize[]" "the employment of an alien"—without imposing any conditions or constraints on the Secretary's exercise of that authority. 8 U.S.C. § 1324a(h)(3). To that end, courts have long recognized that this provision vests the Secretary with the *discretionary* authority to grant employment authorization. *See Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1062 (9th Cir. 2014) ("Congress has given the Executive Branch broad discretion to determine when noncitizens may work in the United States."). Section 1252(a)(2)(B)(ii) therefore bars jurisdiction over claims challenging decisions or actions governing employment authorization applications— including challenges to policies to "hold" such applications "in abeyance." *Patel v. Jaddou*, 695 F. Supp. 3d 158, 173 (D. Mass. 2023).

---

[1] The Court also lacks jurisdiction to review the Policy Memoranda because the APA does not allow for judicial review of agency actions "committed to agency discretion by law." 5 U.S.C. § 701(a)(1). And, as described below, the INA vests the Secretary of Homeland Security with the discretionary authority to grant employment authorization. *See* p. 8, *infra*.

### B. In any event, Plaintiffs' claim fails on the merits.

Because the Court lacks jurisdiction over Plaintiffs' claims, Plaintiffs necessarily cannot demonstrate a likelihood of success on the merits. *See Int'l Ass'n of Machinists & Aerospace Workers v. E. Air Lines, Inc.*, 826 F.2d 1141, 1145 (1st Cir. 1987) ("the likelihood of success on the merits of the permanent injunction is nil, as the district court lacks subject matter jurisdiction"). Even if the Court could review the Policy Memoranda under the APA, Plaintiffs are still unlikely to succeed on the merits of their claim that the Policy Memoranda are arbitrary and capricious.

The arbitrary-and-capricious standard "is quite narrow: a reviewing court 'may not substitute its judgment for that of the agency, even if it disagrees with the agency's conclusions.'" *Atieh v. Riordan*, 797 F.3d 135, 138 (1st Cir. 2015) (citing *River St. Donuts, LLC v. Napolitano*, 558 F.3d 111, 114 (1st Cir. 2009)). This deferential standard requires only that "agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). Plaintiffs' preliminary injunction motion barely engages with this standard—arguing in conclusory fashion that, "[c]learly the adjudication hold with no end in sight is not only arbitrary and capricious, it is unreasonable and cannot be justified." Doc. No. 6 at 10.

In any event, the Policy Memoranda easily satisfy the arbitrary-and-capricious standard. They cite particular facts to support the agency's decision that more vetting is required, including the killing of a National Guardsman in Washington, D.C. in November 2025, a pattern of security lapses since 2021 tied to a foiled plot for a terrorist attack on Election Day 2024, and law enforcement determinations that 39 countries (including Venezuela), have governance structures that cannot be relied upon to share criminal history and terror-watch data, as well as widespread document fraud in those countries. PA-2025-26 (citing PP 10949); PM-602-0192 at 2-3; PM-602-0194 at 2 & 4 (citing PP 10949 & PP 10998). The agency thus "examine[d] the relevant data and

9

articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted).

Furthermore, consistent with the INA's vetting requirements, Presidential Proclamations 10949 and 10998 required comprehensive review of current vetting procedures with the Secretary of Homeland Security playing a central role. The proclamations directed interagency identification of countries "for which screening and vetting information was so deficient as to warrant" restrictions, and mandated ongoing engagement with such countries on measures needed to comply with U.S. vetting requirements. PP 10949, §1(c), (d); PP 10998, §1(e). The Secretary of State must submit reports to the President every 180 days in consultation with the Secretary of Homeland Security, recommending whether restrictions should be continued, modified, or terminated based on evolving vetting assessments. PP 10949, §5; PP 10998, §7. The proclamations specifically cite the Department of Homeland Security Entry/Exit Overstay Report as evidence for vetting evaluations. PP 10949, §2; PP 10998, §4. An agency "may not simply disregard" a binding presidential directive. *See Sherley v. Sebelius*, 689 F.3d 776, 784-85 (D.C. Cir. 2012). Indeed, as "agenc[ies] under the direction of the executive branch, [defendants] must implement the President's policy directives to the extent permitted by law." *Id.* (citing *Bldg. & Const. Trades Dep't. v. Allbaugh*, 295 F.3d 28, 32-33 (D.C. Cir. 2002). Thus, the agency's interim memoranda placing a pause on final adjudicatory decisions (but not processing) to obtain more vetting and to review agency policies, are not arbitrary and capricious or unlawful under the APA.

Plaintiffs argue that the Presidential Proclamations "restrict the entry to the United States of foreign nationals from various countries," but "do not, nor can they, restrict benefits sought by individuals [already] inside the United States." Doc. No. 6 at 9. That argument, however,

misconstrues both the Proclamations and the Policy Memoranda. Although it is true that the Proclamations suspended and limited the entry of foreign nationals from certain countries, it did so because the screening and vetting processes for those countries were found to be deficient. And nothing prohibits USCIS from implementing a final adjudication hold on benefits applications based on the concerns identified by the Proclamations. The national security threats posed by deficient procedures governing whether to let individuals *enter* the country can also be addressed by strengthening the procedures governing whether to let individuals *remain in* the country.

### C. The remaining preliminary injunction factors weigh in favor of Defendants.

Because Plaintiffs have not established a "reasonable likelihood of success on the merits of [their] claim," the Court need not "address the other prerequisites for injunctive relief." *Compere v. Riordan*, 368 F. Supp. 3d 164, 170 (D. Mass. 2019). Nonetheless, the remaining factors weigh in favor of declining to issue a preliminary injunction.

To start, Plaintiffs have failed to establish irreparable harm. They claim that, without a preliminary injunction, Amaro Bowser will lose her current employment. But, as the Court has recognized, "loss of employment 'does not usually constitute irreparable injury,' even when considering a loss of income and damage to reputation." *Gillan v. Town of Carver*, No. 24-cv-12212-AK, 2025 WL 1836609, at *2 (D. Mass. July 3, 2025) (citation omitted). Moreover, Plaintiffs have not established that a preliminary injunction would address any harm they allege. A preliminary injunction cannot guarantee favorable adjudications: it can only compel premature adjudications before enhanced security vetting is complete. And, critically, if a premature adjudication is compelled without completed security screening, the result will be for USCIS to deny the application or petition because to do otherwise would violate statute, regulation, policy, and the presidential directive.

Plaintiffs have also failed to demonstrate that "the balance of equities and consideration of the public interest" favor a preliminary injunction. *Winter*, 555 U.S. at 32. Traditionally, a court first determines whether the movant's likely harm "will outweigh the harm which granting the injunction would inflict on [the defendant]." *7-Eleven, Inc. v. Grewal*, 60 F. Supp. 3d 272, 283 (D. Mass. 2014). And then it considers whether "[t]he public interest weighs in favor of granting" the preliminary injunction. *Id.* at 285. But where, as here, government actors are the defendants, these factors simply "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

This factor weighs in the government's favor. The Government's interest in national security is "an urgent objective of the highest order." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 28 (2010). The Government "is not required to conclusively link all the pieces in the puzzle" before courts grant weight to its conclusions. *Id.* at 35. USCIS's policies respond to documented findings about widespread corruption, fraudulent documents, unreliable criminal records, and law enforcement reporting documenting that inadequate vetting resulted in entry of individuals involved in terrorism. The policies direct comprehensive reviews examining adequacy of existing procedures. Requiring immediate adjudications before completing these reviews would undermine their purpose and could result in approving applications where security concerns have not been adequately addressed. *Winter*, 555 U.S. at 20, 24. The national security concerns underpinning the Policy Memoranda thus outweigh any harm to Plaintiffs from the delay.

## IV. CONCLUSION

The Court should deny Plaintiffs' motion for a preliminary injunction.

    Respectfully submitted,

    LEAH B. FOLEY
    United States Attorney

Dated: February 16, 2026            By:      /s/ Michael L. Fitzgerald
                                             MICHAEL L. FITZGERALD
                                             Assistant United States Attorney
                                             U.S. Attorney's Office
                                             1 Courthouse Way, Ste. 9200
                                             Boston, MA 02210
                                             (617) 748-3266
                                             michael.fitzgerald2@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                             /s/ Michael L. Fitzgerald
                                             MICHAEL L. FITZGERALD
                                             Assistant U.S. Attorney