UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

VALENTINA AMARO BOWSER, et al,

Plaintiffs,

v.

Case No. 26-cv-10382-AK

MARKWAYNE MULLIN, *Secretary of the Department of Homeland Security*, et al,[1]

Defendants.

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

**I.      INTRODUCTION**

Valentina Amaro Bowser, a native and citizen of Venezuela, and her husband, Brandon Bowser, seek to compel U.S. Citizenship and Immigration Services (USCIS) to finish adjudicating their Form I-765, Form I-130, and Form I-485 applications.  USCIS, however, has issued interim guidance placing a hold on final adjudications of applications for certain immigration benefits, such as adjustment of status, by individuals from specified countries, including Venezuela.  Plaintiffs claim that the adoption of this policy was unlawful and that, in any event, USCIS has unreasonably delayed in adjudicating their applications.  But the agency has since adjudicated their Form I-765 and Form I-130 applications, rendering those aspects of their claims moot.  It has no statutory or regulatory obligation to finish adjudicating the remaining Form I-485 application within a set amount of time.  Even if it did, Plaintiffs have failed to allege facts showing that the agency has unreasonably delayed in doing so.  The Court lacks jurisdiction to review USCIS's

---

[1] Secretary of Homeland Security Markwayne Mullin has been automatically substituted for former Secretary Kristi Noem.  Fed. R. Civ. P. 25(d).

interim hold policy.  And, regardless, Plaintiffs' legal theory challenging it fails as a matter of law.

Accordingly, and for the reasons explained below, the Court should dismiss the complaint.

## II.    BACKGROUND

### A.  Legal Background

#### 1.  Presidential Directives and Challenged Policies

Executive Order 14161 (Jan. 20, 2025) directs enhanced vetting for "all aliens who intend

to be admitted, enter, or are already inside the United States," focusing on "aliens coming from

regions or nations with identified security risks."  EO 14161, § 2.  It requires that aliens "already

present in the United States . . . do not advocate for, aid, or support designated foreign terrorists."

*Id.*, § 1(b).  Presidential Proclamation 10949 implemented initial findings of the ongoing review

and directed continued assessment of vetting procedures.  Proclam. No. 10949, 90 Fed. Reg.

24,497 (June 10, 2025).  Presidential Proclamation 10998 (Dec. 19, 2025) designated 39 countries

with documented deficiencies:

> [W]idespread corruption, combined with lack of vetting and poor recordkeeping, result in any non-citizen obtaining any civil document . . .  [T]here is a fraudulent document market producing falsified records, making written corroboration practically impossible . . . [C]riminal records are unreliable and inaccessible . . . United States visas are used for illicit transborder movement by corrupt officials and organized crime.

PP 10998, § 1(f).  Per "law enforcement reporting, foreign nationals from countries named in this

proclamation have been involved with crimes including murder, terrorism, embezzling public

funds, human smuggling, human trafficking, and other criminal activity."  *Id.*

DHS issued Policy Alert PA-2025-26 directing USCIS to consider country-specific risk

factors "as significant negative factors in adjudication of discretionary benefit requests" while

preserving adjudicatory discretion.  PA-2025-26 at 1-2.

USCIS issued Policy Memorandum PM-602-0192 (Dec. 2, 2025) directing comprehensive

security review and establishing holds pending operational guidance:

> Recently, the United States has seen what lack of screening, vetting, and prioritizing expedient adjudications can do to the American people. An Afghan national . . . planned a terrorist attack on Election Day 2024. Tawhedi pled guilty to conspiring and attempting to provide material support to ISIS. In another instance, an Afghan national . . . is suspected of planning and executing a terrorist attack in Washington, DC against two National Guard members, one killed and another critically injured.

PM-602-0192 at 2. PM-602-0194 defines "hold" to mean "a case [can] proceed through processing, up to final adjudication," with "only the decision deferred" – "if a hold is in place, the case can continue to move forward until ready for a decision." PM-602-0194 at 2 n.2. USCIS continues collecting biometrics, conducting background checks, performing security screenings, and completing interviews. PM-602-0192 at 3-4. On January 1, 2026, USCIS issued Policy Memorandum PM-602-0194, expanding the hold to additional countries with identical provisions. PM-602-0194 at 2-5. Both PMs direct that holds "remain in effect until lifted or modified by the USCIS Director through a subsequent memorandum." PM-602-0192 at 3; PM-602-0194 at 5.

On March 30, 2026, USCIS issued a web alert stating that the agency has "established an internal process for lifting holds on individual or group cases, requiring comprehensive review by multiple offices," and that "[h]olds have been lifted for aliens vetted through Operation PARRIS, certain petitions filed by U.S. citizens, intercountry adoption forms, certain rescheduled oath ceremonies, statutory and regulatory decision issuance, refugee registrations for South African citizens/nationals, certain special immigrant visa petitions, certain employment authorization documents, and asylum applications from non high-risk countries, and applications associated with medical physicians." USCIS, *Update on USCIS' Strengthened Screening and Vetting*, available at https://www.uscis.gov/newsroom/alerts/update-on-uscis-strengthened-screening-andvetting. The hold policy thus remains in effect for, as relevant here, Form I-485 applications for individuals from high-risk countries.

### B. Factual Background

According to the complaint, Amaro Bowser—a native and citizen of Venezuela—"entered the United States with a valid F-1 visa to attend college." Doc. No. 1 at 4 ¶ 9. Following graduation, she "applied for an H-1B visa and was approved." *Id.* at 5 ¶ 10. Amaro Bowser subsequently began working as a Media Director for the Commonwealth of Massachusetts, her current employer. *Id.* In November 2024, Amaro Bowser married Plaintiff Brandon Bowser, who filed a Form I-130 (Petition for Alien Relative) the following year. *Id.* at 6 ¶ 12. At the same time, Amaro Bowser filed a Form I-485 (Application to Register Permanent Residence or Adjust Status). *Id.* Moreover, on December 11, 2025, Amaro Bowser filed a Form I-765 (Application for Employment Authorization). *Id.* at 7 ¶ 12.

On January 27, 2026, Plaintiffs filed this action asserting three claims. First, Plaintiffs seek to compel USCIS to adjudicate their pending Form I-130, I-485, and I-765 applications under 5 U.S.C. § 706(1), which directs courts to "compel agency action unlawfully withheld or unreasonably delayed." *See* Doc. No. 1 at 11-13. Second, Plaintiffs ask the Court to enjoin USCIS from applying PM-602-0192 and PM-602-0194 (the "Policy Memoranda") to their applications under 5 U.S.C. § 706(2)(A), which directs courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* Doc. No. 1 at 13-14. Third, Plaintiffs seek to compel USCIS to adjudicate their pending Form I-130, I-485, and I-765 applications under 28 U.S.C. § 1361 (the Mandamus Act), which vests district courts with jurisdiction to grant relief "in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *See* Doc. No. 1 at 14-15.

4

Plaintiffs also filed a motion for a preliminary injunction requiring USCIS to adjudicate Amaro Bowser's Form I-765 application for employment authorization. Doc. No. 5. The Court granted that motion, Doc. No. 20 at 21-22, and, on March 10, 2026, the agency approved Amaro Bowser's Form I-765 application, *see* Exhibit A. In addition, on May 14, 2026, the agency approved Bowser's Form I-130 application. *See* Exhibit B.

## III.   STANDARD

A court should dismiss claims under Rule 12(b)(1) when it lacks jurisdiction to decide them. That includes where, as here, a claim has become moot, a judicial-review bar applies, or final agency action is lacking. *See Horizon Bank & Tr. Co. v. Massachusetts*, 391 F.3d 48, 53 (1st Cir. 2004) ("Mootness is a jurisdictional defect"); *Acosta v. Blanche*, No. 25-1045, 2026 WL 1194802, at *20 (1st Cir. May 1, 2026) (treating 8 U.S.C. § 1252(a)(2)(B)(i) as jurisdictional); *Puerto Rico v. United States*, 490 F.3d 50, 70 (1st Cir. 2007) ("The issue of whether there was final agency action implicates the jurisdiction of the federal courts"). "When a district court considers a Rule 12(b)(1) motion, it must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010). "A plaintiff, however, may not rest merely on unsupported conclusions or interpretations of law." *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995) (citation omitted). "[T]he party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d 57, 60 (1st Cir. 1993).

In addition, a court should dismiss claims under Rule 12(b)(6) when the underlying allegations fail "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). A court should thus dismiss a claim "if the complaint does not set forth 'factual allegations, either direct

or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *U.S. ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 384 (1st Cir. 2011) (quoting *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008)). In making this determination, the court should disregard legal conclusions but must treat "[n]on-conclusory factual allegations" as true. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).

Ordinarily, the dispositive question in an APA case concerns "not whether the facts set forth in a complaint state a plausible claim but, rather, whether the administrative record sufficiently supports the agency's decision." *Atieh v. Riordan*, 727 F.3d 73, 76 (1st Cir. 2013). "This does not mean, however, that Rule 12(b)(6) can never be in play in an APA [case]." *Id.* at 76 n.4. As the First Circuit has explained, "[s]uch a motion may be appropriate in certain circumstances," including where, as here, "the agency claims that the underlying premise of the complaint is legally flawed (rather than factually unsupported)." *Id.*

## IV. ARGUMENT

### A. The adjudication of Amaro Bowser's Form I-765 application and Bowser's Form I-130 application renders Plaintiffs' claims partially moot.

On March 10, 2026, USCIS approved Amaro Bowser's Form I-765 application for employment authorization. *See* Exhibit A. On May 14, 2026, USCIS approved Bowser's From I-130 petition for alien relative. *See* Exhibit B. The Court should therefore dismiss Plaintiffs' claims as moot insofar as they concern these applications. *See, e.g.*, *Kinuthia v. Biden*, No. 21-cv-11684-NMG, 2022 WL 17653503, at \*8 (D. Mass. Nov. 9, 2022) ("Whether raised under the MVA, APA, or both, courts routinely declare . . . delay-based claims moot after [the agency] processes the once-pending applications"); *LaMarche v. Mayorkas*, No. 23-cv-30029-MGM, 2024 WL 2502929, at \*4 n.4 (D. Mass. May 22, 2024) ("Under either the APA or the Mandamus Act, when an

unreasonable delay claim is predicated on an immigration petition, the claim is routinely found moot when the government adjudicates the petition.").

    **B.   The Court should dismiss Count One.**

        **1.   The Court lacks jurisdiction to compel USCIS to adjudicate Amaro Bowser's Form I-485 application.**

In Count One, Plaintiffs seek to compel USCIS to adjudicate Amaro Bowser's Form I-485 application.  The APA generally authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  And Plaintiffs assert that USCIS has "unlawfully and unreasonably delayed . . . acting on [their] applications due solely to" the hold policy.  Doc. No. 1 at 12.  The APA does not, however, apply where another statute "preclude[s] judicial review."  5 U.S.C. § 701(a)(1).  Relevant here, the INA precludes judicial review of "any judgment regarding the granting of relief under section . . . 1255 of this title," which authorizes USCIS to adjust the status of an eligible individual to that of lawful permanent resident.  8 U.S.C. § 1252(a)(2)(B)(i); *see* 8 U.S.C. § 1255.  Accordingly, § 1252(a)(2)(B)(i) precludes judicial review of "any judgment regarding" the decision to grant or deny legal permanent resident status.

True, Plaintiffs do not seek judicial review of the ultimate decision to grant or deny Amaro Bowser legal permanent resident status.  But § 1252(a)(2)(B)(i) covers more than just "the ultimate grant or denial of relief."  *Patel v. Garland*, 596 U.S. 328, 343 (2022).  The provision's reference to "any" judgment means that it "applies to judgments 'of whatever kind' under § 1255, not just discretionary judgments or the last-in-time judgment."  *Id.* at 338.  And the provision's reference to any judgment "regarding" the granting of relief means that it "encompasses not just 'the granting of relief' but also any judgment *relating to* the granting of relief."  *Id.* at 339.

Section 1252(a)(2)(B)(i) therefore bars judicial review of USCIS's judgments about "the processing of [Form I-485] applications," which in turn encompass "the discretion to determine

when the [agency] has determined that [it] has sufficient, current, reliable information upon which to base [its] ultimate decision." *Touarsi v. Mueller*, 538 F. Supp. 2d 447, 452 (D. Mass. 2008). As explained by the December 2, 2025 policy memorandum, the agency determined that its processes for adjudicating Form I-485 applications for individuals from high-risk countries were not producing sufficient and reliable information upon which to base its ultimate decisions, and that placing a hold on the adjudication of such applications was therefore necessary. *See* PM-602-0192. A discretionary judgment concerning the sufficiency of the procedures that the agency employs in deciding whether to grant a Form I-485 application plainly constitutes a judgment *relating to* the granting of such relief. "Accordingly, this Court lacks jurisdiction to enter an order under either the mandamus statute, 28 U.S.C. § 1361, or the APA, 5 U.S.C. § 706(1), to compel [USCIS] to act on the pending [Form I-485] application." *Touarsi*, 538 F. Supp. 2d at 452; *but see Doe v. Trump*, No. 25-cv-13946-JEK, 2026 WL 1170971, at *7–8 (D. Mass. Apr. 30, 2026).

### 2. Plaintiffs have failed to state a claim under § 706(1).

Even if the Court were to find that it has jurisdiction, Plaintiffs' allegations nonetheless fail to state a claim on the merits. "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take.*" *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). "The limitation to *required* agency action rules out judicial direction of even discrete agency action that is not demanded by law." *Id.* at 65. For example, "when an agency is compelled by law to act within a certain time period . . . a court can compel the agency to act." *Id.* Here, however, neither the INA nor any other statute requires USCIS to decide Form I-485 applications within a set amount of time.

Regardless, the amount of time that USCIS has taken to adjudicate Amaro Bowser's Form I-485 application has not been unreasonable. In evaluating an unreasonable-delay claim on a

motion to dismiss, this Court typically considers the factors discussed in the D.C. Circuit's opinion in *Telecommunications Research and Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*"). *See, e.g.*, *Novack v. Miller*, 727 F. Supp. 3d 70, 77 (D. Mass. 2024) (applying *TRAC* factors to claim at motion-to-dismiss stage).

In *TRAC*, the D.C. Circuit set forth the following "guidance" for consideration "[i]n the context of a claim of unreasonable delay":

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed."

*TRAC*, 750 F.2d at 80 (internal citations omitted).

Even accepting the factual allegations in the complaint as true, Plaintiffs have failed to state an unreasonable-delay claim based on the *TRAC* factors.

**Factor One (Rule of Reason).** The first factor asks whether the time that the agency takes to render its decisions follows a "rule of reason"—in other words, "whether the agency's response time . . . is governed by an identifiable rationale." *Ahadian v. Rubio*, No. 24-cv-12168-ADB, 2025 WL 1617224, at *7 (D. Mass. June 6, 2025) (citing *Center for Science in the Public Interest v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014)). Plaintiffs do not allege that USCIS's approach toward processing Form I-485 applications lacks an identifiable rationale. To the contrary, the complaint and its exhibits confirm that the agency "generally process[es] cases in the order [it] receives them." Doc. No. 1-5 at 2. And an agency's "practice (as stated in its public documents) of considering [applications] in the order they are received" qualifies as "a 'rule of reason.'"

*V.U.C. v. USCIS*, 557 F. Supp. 3d 218, 223 (D. Mass. 2021); *see Novack*, 727 F. Supp. 3d at 78 ("Defendants argue that they adhere to such a rule given that they state publicly that they 'generally process cases in the order we receive them.' First-come-first-served is a logical and identifiable rationale and therefore this factor leans in Defendant's favor." (citation omitted)).

Moreover, to the extent that the length of the agency's response time results from the hold policy, its response time is clearly governed by an identifiable rationale—namely, the need to place a hold on Form I-485 applications pending a comprehensive review of the agency's procedures—even if Plaintiffs might disagree with the soundness of that rationale. *Cf. Bemba v. Holder*, 930 F. Supp. 2d 1022, 1030 (E.D. Mo. 2013) ("the current hold placed on adjudication of Plaintiff's application results directly from the CAA and the USCIS's CAA-based policy and thus satisfies the rule of reason under the first *TRAC* factor").

**Factor Two (Statutory Timetable).** The second factor, which asks whether "Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute," *TRAC*, 750 F.2d at 80, also favors Defendants. Plaintiffs do not allege that Congress has specified a timetable for adjudicating Form I-485 applications. Nor could they. *Liu v. Denayer*, No. 21-cv-6653-DMG, 2022 WL 17370527, at *4 (C.D. Cal. July 18, 2022) ("There is no congressionally mandated timetable for adjudicating I–485 applications."). Indeed, Congress "has given 'agencies wide discretion in the area of immigration processing.'" *Kennedy v. United States Department of State*, No. 24-cv-11556-DJC, 2025 WL 662566, at *4 (D. Mass. Feb. 28, 2025) (citing *Arab v. Blinken*, 600 F. Supp. 3d 59, 69 (D.D.C. 2022)).

Absent a statutory timetable, "the Court looks to case law for guidance," *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 165 (D.D.C. 2021), and asks "whether 'the delay has reached the level of disproportionality previously held sufficient to grant relief," *Ghannad-Rezaie v. Laitinen*,

757 F. Supp. 3d 148, 155 (D. Mass. 2024) (alterations adopted) (citation omitted).    Amaro Bowser's Form I-485 application has been pending for about 16 months—well short of "the threshold at which courts have found unreasonable delay in the immigration context." *Subramanyan v. Selby*, No. 26-cv-00113-DFM, 2026 WL 1196250, at *4 (C.D. Cal. Apr. 27, 2026).    And, in any event, "[t]he duration of administrative proceedings, without more, cannot suffice to demonstrate that an agency's actions are unreasonable." *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 178 (1st Cir. 2016).

**Factors Three and Five (Harm and Prejudice).**    "The third and fifth factors are ordinarily assessed together and relate to the 'interests prejudiced by delay,' including the 'impact on human health and welfare and economic harm.'"    *Manshadi v. Allen*, No. 24-cv-10118-ADB, 2025 WL 524173, at *6 (D. Mass. Feb. 18, 2025) (citing *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 118 (D.D.C. 2005)).    Here, Plaintiffs summarily assert that the alleged delay in adjudicating their applications "has caused [them] severe emotional and financial harm."    Doc. No. 1 at 10.    But the agency's approval of Amaro Bowser's application for employment authorization has eliminated the financial harm that they otherwise expected to incur.    And while Plaintiffs do not elaborate on their conclusory assertion of emotional harm, this Court has frequently explained that similar allegations of "emotional" strain fail to "support a finding of unreasonable delay."    *Ahadian*, 2025 WL 1617224, at *8; *see, e.g.*, *VUC*, 557 F. Supp. 3d at 223 (explaining that, while such interests may be "weighty," "they are no more so than those of all [other applicants]").

**Factor Four (Effect of Expediting Delayed Action).**    The fourth factor asks courts to "consider the effect of expediting delayed action on agency activities of a higher or competing priority."    *TRAC*, 750 F.2d at 80.    And where, as here, "a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain," this

11

Court and others have "refused to grant relief, even [if] all the other factors considered in *TRAC* favored it." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (alterations adopted, citation omitted); *see also VUC*, 557 F. Supp. 3d at 223 (dismissing complaint where "expediting plaintiffs' petitions would displace other petitioners in the queue who have waited longer for the same relief"). Plaintiffs do not dispute that prioritizing the processing of Amaro Bowser's application would delay USCIS's processing of similarly situated applications.

**Factor Six (Impropriety).** The sixth and final factor simply states that a court "need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'" *TRAC*, 750 F.2d at 80 (citation omitted). Plaintiffs do not allege bad faith. This factor thus "weighs neutrally in the Court's analysis." *Ghasemi v. Rubio*, No. 25-cv-10345-ADB, 2025 WL 3080581, at *7 (D. Mass. Nov. 4, 2025).

Accordingly, considering the *TRAC* factors and accepting the complaint's factual allegations as true, Plaintiffs have failed to state a claim for unreasonable delay under the APA.

## C. The Court should dismiss Count Two.

### 1. The Policy Memoranda do not constitute final agency action.

Defendants maintain that the Policy Memoranda do not constitute "final agency action" reviewable under the APA, 5 U.S.C. § 704, but acknowledge that the Court concluded otherwise in granting Plaintiffs' motion for a preliminary injunction, *see* Doc. No. 20 at 10-14. Accordingly, while Defendants expressly preserve and do not waive this issue, they will not simply re-hash the same arguments in support of their motion to dismiss and will instead focus on one dispositive aspect of the Court's reasoning in its preliminary injunction decision.

To qualify as final, an agency action must "be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178

12

(1997) (internal quotation marks and citation omitted). The Court previously concluded that the Policy Memoranda were final—at least with respect to Amaro Bowser's application for work authorization—because they would "result in Amaro Bowser losing her ability to legally work in the United States." *Id.* at 13. Even if one were to accept that reasoning with respect to Amaro Bowser's application for work authorization, however, Plaintiffs have not identified any similar legal consequences with respect to her Form I-485 application.

The Policy Memoranda themselves do not adjudicate any application or alter any applicant's legal status. The operative legal consequence only occurs when the agency grants or denies an application. To be sure, as the Court observed, "[e]ven short delays can have serious consequences." Doc. No. 20 at 14. But even so, "delay and expense" alone cannot "transform an interlocutory decision into final agency action." *Navajo Nation v. U.S. Dep't of Interior*, 819 F.3d 1084, 1092 (9th Cir. 2016). Moreover, not all "[p]ractical consequences" amount to "legal consequences." *Ctr. for Env't Health v. Wheeler*, 429 F. Supp. 3d 702, 714 (N.D. Cal. 2019). And, to qualify as final, an agency action must have "direct and appreciable *legal* consequences." *Bennett*, 520 U.S. at 178 (emphasis added); *Joshi v. Nat'l Transp. Safety Bd.*, 791 F.3d 8, 11 (D.C. Cir. 2015) (distinguishing between "practical consequences" and "legal harms that can transform [an action] into a final [agency action]"). Although the Supreme Court has interpreted the finality requirement in a "pragmatic way," *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967), *abrogated by Califano v. Sanders*, 430 U.S. 99 (1977), that pragmatic approach still requires agency action to have legal consequences—not merely practical ones, even if serious.

### 2. Plaintiffs have failed to state a claim under § 706(2).

5 U.S.C. § 706(2)(A) directs a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or

13

otherwise not in accordance with law." In Count Two, Plaintiffs claim that the hold policy "is arbitrary, capricious, and contrary to law." Doc. No. 1 at 13. But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The *only* specific allegation that Plaintiffs raise in support of this claim consists of their assertion that "USCIS does not have the authority under 8 U.S.C. § 1182(f) to place a hold on [the] adjudication of benefits applications." Doc. No. 1 at 10. They acknowledge that 8 U.S.C. § 1182(f) allows the President to restrict "the *entry* of individuals from various countries into the United States." *Id.* But they argue that it does not allow USCIS to pause the adjudication of benefits applications filed by individuals—such as Amaro Bowser—who are already "*within* the United States." *Id.* (emphasis added).

The fundamental problem with this argument is that USCIS did not issue the hold policy pursuant to 8 U.S.C. § 1182(f). The agency's authority to place a hold on adjudicating applications for adjustment of status flows from its broad "authority to manage the adjustment of status application process" under 8 U.S.C. § 1255—which includes the authority to manage the "pace" of processing such applications. *Touarsi*, 538 F. Supp. 2d at 452. Neither Policy Memorandum purported to invoke 8 U.S.C. § 1182(f) as legal authority for the pause. To be sure, the Policy Memoranda cite Presidential Proclamations 10949 and 10998, which were issued under 8 U.S.C. § 1182(f). But that is because the Presidential Proclamations identify national security and public safety concerns that the hold policy *seeks to address*. The fact that USCIS implemented the hold policy to address concerns identified by the Presidential Proclamations does not mean that it relied on 8 U.S.C. § 1182(f) as the legal authority for this policy. Because the premise underlying Plaintiffs' § 706(2) theory fails as a matter of law, they have failed to state an actionable claim for relief. *See Hutcheson*, 647 F.3d at 384; *Atieh*, 727 F.3d at 76 n.4 (explaining that a motion to

14

dismiss for failure to state a claim may be appropriate where "the agency claims that the underlying premise of the complaint is legally flawed").

For its part, in granting Plaintiffs' motion for a preliminary injunction, the Court found that Plaintiffs were likely to succeed on their § 706(2) claim because "[t]here is no evidence that Defendants considered reasonable alternatives to the expansive hold policy."  Doc. No. 20 at 16-17 (citation omitted).  But, respectfully, no administrative-law principle requires an agency to consider "reasonable alternatives" to its chosen policy to survive arbitrary-and-capricious review.  In *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983), the Supreme Court considered the National Highway Traffic Safety Administration's rescission of a rule that required new cars to have automatic seatbelts or airbags.  The agency rescinded the rule based on its view that requiring automatic seatbelts would not produce "significant safety benefits."  *Id.* at 38.  But it did so "without any consideration whatsoever of an airbags-only requirement," even though the agency previously found that "airbags are an effective and cost-beneficial life-saving technology."  *Id.* at 51.  The Supreme Court explained that an agency need *not* "consider all policy alternatives in reaching [a] decision."  *Id.*  But an airbags-only requirement was no mere "policy alternative"—it was "a technological alternative" already "within the ambit of the existing standard."  *Id.*

Put another way, even if requiring automatic seatbelts would not produce significant safety benefits, it was unclear why the agency needed to rescind the existing standard *in full*.  Given that airbags constituted a technological alternative already within the ambit of the existing rule, the agency could have continued to require new cars to have airbags without requiring them to have automatic seatbelts.  The agency's rationale for rescinding the existing safety rule—namely, its view that automatic seatbelts would prove ineffective—did "not cast doubt" on the "efficacy of

15

airbag technology" or on "the need for" this type of safety rule generally. *Id.* at 47.  Its failure to even *consider* an airbags-only requirement was thus arbitrary and capricious.

Similarly, in *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1 (2020), the Supreme Court reviewed the Acting Secretary of Homeland Security's termination of the immigration program known as Deferred Action for Childhood Arrivals (DACA).  Under DACA, certain individuals could apply for a two-year forbearance of removal, which, if granted, would render the applicant eligible for certain benefits, such as Social Security and Medicare. *Id.* at 9.  In deciding to terminate DACA, the Acting Secretary explained that, in her view, the program's *provision of benefits* violated the INA. *Id.* at 24.  But, in so doing, she did not consider whether to retain the *forbearance* aspect of the program—even though "removing benefits eligibility while continuing forbearance remained squarely within [her] discretion." *Id.* at 28.

The Supreme Court concluded that the Acting Secretary had "repeated the error" it identified in *State Farm*. *Id.* at 28.  "Even if it is illegal for DHS to extend work authorization and other benefits to DACA recipients, that conclusion supported only 'disallow[ing]' benefits.'" *Id.* at 29 (citing *State Farm*, 463 U.S. at 47).  "It did 'not cast doubt' on the legality of forbearance or upon DHS's original reasons for extending forbearance to childhood arrivals." *Id.*  It was therefore arbitrary and capricious for the Acting Secretary to terminate DACA "in full 'without any consideration whatsoever' of a forbearance-only policy." *Id.*

*State Farm* and *Regents* thus describe a specific category of error: terminating an *entire* program based on a rationale that applies to only *part* of it—without even considering whether to retain aspects of the program unaffected by the agency's termination rationale. *State Farm* and *Regents* do not, by contrast, impose a general rule requiring an agency to consider "reasonable alternatives" any time that it adopts a new policy.  The error present in *State Farm* and *Regents*

16

accordingly has no relevance here, where the agency has not terminated a prior program at all. Even if it had, the agency's rationale for instituting the hold policy—namely, that its processes and procedures for adjudicating benefits applications for individuals from high-risk countries required a comprehensive review—supports the hold policy in full, not merely part of it.[2] And in any event, "[t]he APA does not . . . require agencies to tailor their regulations [or policies] as narrowly as possible to the specific concerns that generated them." *Associated Dog Clubs of New York State, Inc. v. Vilsack*, 75 F. Supp. 3d 83, 92 (D.D.C. 2014).

In sum, neither Plaintiffs' allegations nor the Court's prior reasoning can sustain their claim that USCIS's adoption of the hold policy was arbitrary and capricious or not in accordance with law. Plaintiffs have therefore failed to state a claim under § 706(2).

### D. The Court should dismiss Count Three.

Finally, in Count Three, Plaintiffs seek relief under 28 U.S.C. § 1361, which authorizes district courts to grant relief "in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Plaintiffs specifically ask for a "an order compelling USCIS to adjudicate their Forms I-130, I-485, and/or I-765 without further delay." Doc. No. 1 at 15. To receive relief under § 1361, however, a plaintiff show "that he has a clear right to the relief sought, has no other adequate remedy, and that there is a clearly defined and peremptory duty on the part of the [defendant] . . . to do the act in question." *Georges v. Quinn*, 853 F.2d 994, 995 (1st Cir. 1988). Yet, Plaintiffs do not cite any law or regulation conferring a "clear right" to compel USCIS to adjudicate a Form I-485 application within a set amount of time. Their claim under § 1361 thus fails for that reason alone. *Am. Waterways*

---

[2] Plaintiffs do not dispute that the national security and public safety concerns posed by deficient procedures governing whether to let individuals *enter* the country can also be addressed by strengthening the procedures governing whether to let individuals *remain in* the country.

17

*Operators v. United States Coast Guard*, 613 F. Supp. 3d 475, 489–90 (D. Mass. 2020) ("For a mandamus action to lie, a plaintiff must identify a source of the duty owed to them."). And to the extent that Plaintiffs mean to assert that the APA supplies the relevant source of their alleged right, their claim necessarily fails for the same reasons discussed above. *See* pp. 8-12, *supra*.

## V.     CONCLUSION

The Court should dismiss the complaint.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: May 14, 2026                    By:    */s/ Michael L. Fitzgerald*
MICHAEL L. FITZGERALD
Assistant United States Attorney
U.S. Attorney's Office
1 Courthouse Way, Ste. 9200
Boston, MA 02210
(617) 748-3266
michael.fitzgerald2@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Michael L. Fitzgerald*
MICHAEL L. FITZGERALD
Assistant U.S. Attorney

18